UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v.. | ) | Criminal No. 25-cr-10378-1 |
| | ) | |
| ALEXANDER AIELLO | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF SENTENCING**

NOW COMES THE DEFENDANT, by and through counsel, and hereby submits this memorandum in support of a joint sentencing recommendation agreed to between the defendant and the United States as follows:  a sentence of 48 months imprisonment; five years of supervised release; a mandatory special assessment of $100; an additional special assessment of $5000 pursuant to 18 U.S.C. § 3014(a)(3) (the "JTVA assessment"), unless the Court determines the defendant is indigent; an additional special assessment of up to $17,000, pursuant to 18. U.S.C. § 2259A (the "AVAA assessment"), unless the Court determines the defendant is indigent, mandatory restitution in an amount to be determined; forfeiture as set forth in the information and plea agreement; and registration as a Sex Offender pursuant to the Sex Offender Registration and Notification Act and the laws of the Commonwealth of Massachusetts.  The defendant submits that such a sentence is fair, reasonable, appropriate and warranted in this case and comports with the factors outlined in 18 U.S.C. § 3553(a).

**PROCEDURAL HISTORY**

On April 28, 2025, the defendant was confronted by FBI and other government agents at the Gloucester Police Department, where he was employed as a patrol officer.  He was informed that there were search warrants for his home, along with his computer and other electronic

devices.  He turned over cellular telephones and a Samsung watch and was cooperative with the investigation and execution of the warrants.  Computers and assorted items including USB devices were seized from his home in Gloucester.  Several days later, the defendant sought inpatient treatment at McLean Hospital in Belmont, where he remained for approximately one-month.  Agents from the FBI and U.S. Marshals, along with the United States Attorney's Office, gave consideration to the defendant's mental health status and allowed for his treatment to progress while an arrest warrant, issued on or around May 9, 2025, remained outstanding.  On May 28, 2025, the defendant, along with the undersigned counsel presented himself to the U.S. Marshals for arrest on the warrant, and he was brought before the Court for an initial appearance that afternoon.  The defendant voluntarily agreed to confinement at his initial appearance and has been confined at the Plymouth County House of Correction from May 28, 2025 until sentencing.  On September 19, 2025, a one-count information charging the defendant with Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) was filed.  On October 30, 2005, the defendant waived indictment and pleaded guilty to the information, pursuant to a Fed.R.Crim.P. 11(c)(1)(C) plea agreement.  The negotiated plea agreement involved a concession by the United States to charge the defendant with Possession of Child Pornography, rather than Receipt of Child Pornography, which would have carried a statutorily required term of 60 months, in exchange for the defendant agreeing to the terms contained in the joint sentencing recommendation delineated above.  He will appear before the Court for sentencing on January 23, 2026.  The defendant has reviewed the final Presentence Report issued by United States Probation and is in agreement with the adjusted offense level of 21 and guideline recommendations contained therein.

**SENTENCING CONSIDERATIONS**

In 2005, the Supreme Court ruled in Booker v. United States that U.S. Sentencing Guidelines were advisory. 543 U.S. 220 (2005). The sentencing guidelines are now considered as one of five (5) factors to be taken into account when determining a sentence. The factors to be considered are (1) the sentencing guideline range; (2) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution. Id.; 18 U.S.C. § 3553(a)(2). However, in considering the 3553(a) factors, the sentencing guidelines are to be given no more or less weight than any other factor. See United States v. Jabor, 362 F.Supp 2d 365 (D. Mass. 2005). In United States v. Pelletier, the District Court held that:

> "It is well settled that: (i)n constructing a sentence under an advisory guidelines regime a sentencing court ordinarily should begin by calculating the applicable guideline sentencing range; then determine whether or not any departures are in order; then mull the factors delineated in 18 U.S.C. § 3553(a) as well as any other relevant considerations; and finally, determine what sentence, whether within, above, or below the guideline sentencing range, appears appropriate."

469 F.3d. 194, 203 (2006). Furthermore, under the provisions of 18 U.S.C. § 3553(a), "the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (the statute). This so-called "parsimony provision" is not simply a factor to be considered in determining the appropriate sentence; it represents a cap above which the Court is statutorily prohibited from sentencing, even when a greater sentence is recommended by the sentencing guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3rd Cir. 1989) (Becker, J., *concurring in part, dissenting in part*).

**18 U.S.C. § 3553 FACTORS AS APPLIED TO THE DEFENDANT**

A.   **The Nature and Circumstances of the Offense**

The defendant does not contest the facts contained within the Government's Sentencing Memorandum and the Presentence Investigation Report. His plea of guilty reflected his awareness that his conduct in viewing child sexual material was indefensible and illegal, and understands the purposes of incarceration, rehabilitation and deterrence that a custodial sentence will provide. The defendant's misconduct was limited to viewing still and video files containing both licit and illicit pornography, and did not involve the production, distribution or dissemination of child sexual abuse material. Nor did his misconduct occur outside the confines of his own home, or extend into the physical realm involving contact with minor children. The defendant recognizes and understands the position that the consumption of this material, even in a passive, 'view-only' manner, contributes to the demand for the production of the same, and has real-world, significant negative consequences for the victims depicted in the videos and files that he viewed.

B.   **The History and Characteristics of the Defendant**

The defendant adopts and incorporates by reference the extensive history and characteristics memorialized in the Presentence Investigation Report and makes special note of the following factors contained therein:

Mr. Aiello is 35 years old. He was born in Gloucester, Massachusetts and is the oldest of five boys. Gloucester is both literally and figuratively an insular community, and the Aiello family is enmeshed in local public service within the community. Mr. Aiello's father, Stephen, was a Deputy Fire Chief; his mother has worked for the Police Department as a matron, and two of Mr. Aiello's younger brothers followed him into service as police officers, where they remain

employed today. Mr. Aiello graduated from Gloucester High School in 2008 and from Salem State University in 2013, with a degree in Criminal Justice. When he was 24 years old, he was hired on by the Gloucester Police Department as a patrol officer. He immediately took to his job with fervor, working overtime shifts and details in addition to his regular schedule. His commitment to the job, however, went beyond work ethic and gradually rose to a level that created concern from fellow patrol officers and supervisors that he was, colloquially, "burning himself out." Mr. Aiello has described these 80-100 hour weekly shifts as "all he did" and described barely sleeping and focusing his other time on both appropriate activities such as working out at the gym, and inappropriate addictive viewing of pornography. Mr. Aiello has submitted to psychiatric evaluations at McLean Hospital and while he has been incarcerated at Plymouth County House of Correction. Both of these evaluations, submitted as Appendices A and B, suggest excessive pornography use as a coping mechanism for stress, anxiety and depression. *See* Sexual Risk Evaluation, p. 8, *submitted as Appendix B*. Neither evaluator drew a conclusion that would support a pedophelia diagnosis, however both suggest that some form of Sexual Disorder is likely present.

Mr. Aiello has reported symptoms of depression and anxiety throughout his teenage and adult years. Prior to April, 2025, he had not sought mental health treatment in any capacity. Several incidents that he bore witness to during his time as a patrol officer contributed to his anxiety and depression. Id., p. 2. These included an incident where he felt his life was put at risk by a criminal suspect that drew a weapon on him, and the suicide of an 18 year old young man, where Officer Aiello was the first to arrive on scene and viewed a gruesome result of a gunshot to the head. *See* Probation Presentence Report, p. 42. While there is never an excuse or "reason" to view child sexual material, the defendant disagrees with the government's contention

that there is no relationship between his untreated mental health issues and his criminal misbehavior–by all accounts, the defendant turned to compulsive activities, whether in working overtime, spending hours at the gym, and spending hours viewing a variety of pornography, as a coping mechanism to shut out the thoughts of anxiety and stress. As he stated, "it kept me busy, kept my brain busy, I didn't have to think about anything else." *See* <u>Sexual Risk Evaluation</u>, p. 5.

      The defendant, despite his criminal misconduct, is widely loved and respected within his community, and his arrest has had a massive impact on himself, his family and friends. He has voluntarily resigned his position as a patrol officer and will never return to public service. He has experienced shame, anxiety, suicidality, and, for the first time in his life, expressed a willingness and need to seek mental health treatment, which he intends to continue throughout his incarceration and supervised release. In further support of this joint sentencing request, the defendant submits character reference letters from his family and members of the Gloucester community for the Court's consideration.

## **CONCLUSION**

      The defendant has committed a significant crime worthy of punishment, and has already suffered collateral consequences from his actions that will be life-changing. He is, however, both remorseful and amenable to treatment and rehabilitation. For these reasons, the defendant urges the Court to adopt the joint recommendation of the parties and to impose a sentence of 48 months followed by 5 years of supervised release, and suggests that this sentence is appropriate and reasonable, and meets the statutory goals of 18 U.S.C. § 3553(a).

                                                Respectfully submitted,

                                                /s/ Benjamin Richard

                                                Benjamin Richard
                                                Counsel for the Defendant
                                                10 Federal Street, Suite 403
                                                Salem, MA 01970
                                                BBO #645185

Dated:  January 22, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and thereby served an electronic copy on counsel for the United States.

Respectfully submitted,

/s/ Benjamin Richard

_____
Benjamin Richard
Counsel for the Defendant