the institute
for sexual wellness
HEALTHY MINDS, SAFE COMMUNITIES

Kaitlyn Peretti, PsyD
Psychologist, ISW
53 Winter St. Weymouth, MA 02188
P 617-479-4501
F 617-479-8109

## Sexual Risk Evaluation

Name: Alexander Aiello
Date of Birth: 6/7/90
Evaluator: Kaitlyn Peretti, Psy.D.
Report Date: 9/10/25

### Identifying Information

Mr. Alexander Aiello is a 34-year-old male who is incarcerated at Plymouth County Correctional Facility (PCCC) in Plymouth, MA. In April 2025, he was charged federally with one count of Possession of Child Pornography. The charge is currently pending. He agreed to pre-trial detention without prejudice.

### Reason for Referral

Mr. Aiello was referred for a sexual risk evaluation by his attorney, Ernest Stone, Esq.

### Sources of Information

- Interview with Mr. Aiello on 8/20/25 for 1 hour and 30 minutes at PCCC in Plymouth, MA
- Review of records
  - McLean Hospital records
    - Physician Discharge Summary, dated 5/28/25
    - Inpatient Progress Notes, dated through 5/27/25
    - Nursing Progress Notes, dated through 5/27/25
    - Forensic Consultation, dated 5/12/25, authored by David Rosmarin, MD
    - Medical Admission Note, dated 4/30/25
    - Psychiatric Admission Note, dated 4/30/25
    - Nursing Admission Note, dated 4/30/25
  - Affidavit in Support of an Application for a Criminal Complaint, dated 5/9/25
  - Affidavit in Support of an Application for a Criminal Complaint, dated 4/24/25
  - Document titled "Timeline of Events: Alex's Deterioration Following Critical Incident," no date, authored by his family
- Risk Assessment Instruments
  - Child Pornography Offender Risk Tool (CPORT)
  - Stable-2007

### Limits of Confidentiality

Prior to beginning the interview, I explained the purpose of the evaluation and the limits of confidentiality to Mr. Aiello. I informed him that the purpose of the evaluation was to complete a sexual risk evaluation. He was informed that there are limits of confidentiality if he and his attorney submit the report to the court, in that the court would have access to information from the interview included in the report. He was informed that his participation in the interview was voluntary, meaning he could choose not to answer some or all of the questions, end the interview at any time,

or not participate at all. Mr. Aiello demonstrated an understanding of the limits of confidentiality and agreed to participate in the assessment.

## Background

Mr. Aiello reported that he was born in Gloucester, MA. He has four younger brothers. He described having a "good" childhood. He did not experience verbal, physical, or sexual abuse. He did not witness violence within his home or neighborhood. He lived with his parents until he was 27, when he purchased a house and lived with his brother.

## Educational History

Mr. Aiello reported that he graduated from Gloucester High School in 2008. He did well academically and did not receive special education services. He was not suspended or expelled from school. He said he did well socially. Mr. Aiello earned a bachelor's degree in criminal justice from Salem State University in 2013.

## Occupational History

Mr. Aiello reported that he worked as a camp counselor at the YMCA and as a baseball umpire in his teens and early twenties. He worked as a substitute teacher in his mid-twenties. He worked as a patrol officer for the Gloucester Police Department from the age of 24 until his arrest. He reported that he enjoyed working as a police officer. He said that he got along well with other officers, and he was elected as the union president. When asked about discipline at work, he stated that when he was the union president, he was disciplined for sending a "sarcastic" email to the police chief and the entire department. He was suspended for a few days. Mr. Aiello reported that he worked 80-100 hours a week for the entirety of his tenure at the Gloucester Police Department. He stated that he primarily worked the midnight shift, and he regularly worked the day shift for overtime. He said, "All I did was work," and he "barely slept." Mr. Aiello denied a history of excessive spending or problematic gambling.

## Military History

Mr. Aiello does not have a history of military service.

## Medical History

Mr. Aiello did not report chronic medical issues. He had his gall bladder removed a few years ago. He had a head injury and loss of consciousness at age 12 while playing hockey. He denied a history of seizures.

## Psychiatric History

Mr. Aiello reported that he experienced symptoms of depression and anxiety throughout his life, beginning when he was in high school. He did not receive mental health treatment until after his legal charges in April 2025. His symptoms included low mood, "feeling down," lethargy, and hopelessness. He described the symptoms as chronic, though he could always "function." He said he first had suicidal thoughts at age 27, following an incident at work. He said, "I had a guy try to kill me on the job, and I couldn't not see that." He stated that his anxiety and depression intensified following this incident. He also has intrusive thoughts and nightmares "sporadically" about the incident. He did not seek mental health services following the incident.

Mr. Aiello reported that he was psychiatrically hospitalized at McLean in April 2025 following the legal charges. He said he briefly discussed the incident and his related symptoms. Mr. Aiello does not have a history of symptoms of psychosis. He does not have a history of suicide attempts.

McLean Hospital records indicate that Mr. Aiello was admitted from 4/30/25 until 5/28/25, when he was discharged to PCCC. He was admitted due to depressive and trauma-based symptoms with suicidal ideation and a plan to jump off a cliff. He initially required 15-minute safety checks upon admission due to concerns of suicidality. He was diagnosed with post-traumatic stress disorder (PTSD) due to a work-related incident, and major depressive disorder, recurrent, severe, without psychosis. His symptoms included depression, anxiety, poor energy, poor concentration, suicidal ideation, avoidance, hypervigilance, and nightmares. He was prescribed prozac 20mg, seroquel 200mg, clonidine 0.2 mg, and ativan 2mg PRN. During the admission, Mr. Aiello reported mild improvement in anxiety and medication. He experienced intermittent episodes of high anxiety, panic attacks, and nightmares. He reported passive suicidal ideation and remained safe. He attended and participated in a group. His parents visited daily and offered support.

Mr. Aiello reported that he is currently prescribed psychiatric medication. He said the medication effectively manages his symptoms, though he often feels tired. He expressed an interest in participating in therapy and developing coping skills for his mental health symptoms.

**Substance Use History**
Mr. Aiello reported that he drank alcohol casually. He denied daily or problematic alcohol use. He has never used drugs.

**Relationship and Social History**
Mr. Aiello reported that he is not currently in a romantic relationship. He has never been married, and he does not have children. He reported having one significant dating relationship, which lasted 5-6 years when he was in his early to mid-twenties. He stated that the relationship ended because his girlfriend wanted to get married and start a family, and he was not ready for that.

Mr. Aiello reported that he has four close friends whom he has known since middle school. He said he maintains contact with them, though not while he is incarcerated. He said his friends are aware of his charges and are still supportive of him. Mr. Aiello reported that he played in men's softball and basketball leagues, but he had limited leisure time due to his work schedule.

**Sexual History**
Mr. Aiello described his sexual orientation as heterosexual. He stated that he is exclusively sexually attracted to adult females. He first noticed an attraction to females when he was in middle school. He first engaged in sexual contact at age 12 and first had sexual intercourse at age 18. He has had three sexual partners. He denied having paid for or traded anything for sex. He reported that he first masturbated at age 13. He masturbated once a day throughout his life. He denied having regularly masturbated multiple times a day. He stated that he first viewed pornography at age 14 (additional information about his pornography use is included below). Mr. Aiello denied all paraphilic interests and behaviors.

**Legal History**

Official criminal history documentation indicates Mr. Aiello has no prior criminal charges or convictions.

**Sexual Offending History**

Mr. Aiello was charged with one count of Possession of Child Pornography. The charges are currently pending. According to the Affidavits in Support of an Application for a Criminal Complaint, dated 5/9/25and 4/24/25, a federal investigation into child pornography determined that in 2024, Mr. Aiello attempted to access the target website with a username and password. The target website contained a page that made clear that all content posted to the website must depict a minor child and that adult pornography was prohibited. While executing a search warrant, law enforcement officers found an encrypted USB drive in Mr. Aiello's bedroom that included names of files indicative of child pornography. Similar files were also found on his laptop. There were 23 files with names indicative of child pornography. One video included the following content:

- A video depicting a prepubescent female who appears to be 4 to 7 years old, lacking breasts and pubic hair. The child was dressed in a bra and wearing pigtails, and the video zoomed in on her vagina. The child sat on a male's penis, rubbed her vagina on the male's penis, rubbed her face on the male's testicles, kissed his testicles, and performed oral sex on the male. The adult made multiple attempts to insert his penis into her vagina and digitally "manipulates" her vagina.

**Mr. Aiello's Account of the Alleged Offense**

During the current interview, Mr. Aiello reported that he viewed pornography daily when masturbating. The content initially included heterosexual sex between adults. He did not view content involving violence. He denied engaging in sexual chats/webcams or exchanging nude photos or videos. When asked about the Child Sexual Exploitation Material (CSEM) content, Mr. Aiello reported that he started viewing barely legal content, "revenge porn", and "amateur porn." He stated that he was not searching for child content, though he downloaded "pseudolegal stuff" because revenge porn does not often include consent. He stated that he downloaded a lot of content at a time, and he was not aware of all the content he downloaded. He stated that he saw minor content, including prepubescent and postpubescent females, and he was not sexually aroused by it.

Mr. Aiello reported that he started viewing revenge porn content 5-6 years ago. He said that he spent hours a day searching for and viewing pornography. He said that he "just clicked on links," and it eventually led him to child content. He described his pornography use as compulsive and stated, "I tried to tell myself to stop." He said that he spent most of his time working, going to the gym, and looking at pornography. He did not view pornography while at work.

When asked about having to log into a site to access the content, Mr. Aiello stated that he did not have a login. He said that we went to "revenge porn" websites and clicked on links that others posted in the comments, which took him to "random download sites." He said that he downloaded large batches of pornography without knowing all of the content included. Mr. Aiello denied having searched for child content or having been aroused by child content.

When asked about his understanding of this behavior, Mr. Aiello reported that it was likely related to his mental health symptoms following the incident at work. He said, "It kept me busy, kept my brain busy, I didn't have to think about anything else." He stated that he was also sexually preoccupied at the time, and his masturbation and pornography use were compulsive.

## Additional Information from the 8/20/25 Interview with Mr. Aiello
Mr. Aiello reported that he has been incarcerated at PCCC since May 2025. He is assigned to the BN2 unit, which is a protective custody unit. He spends his time sleeping, staying on the unit, and going outdoors when allowed. He said he gets along well with peers and staff. He has not had disciplinary problems. He maintains contact with his parents by phone and has twice-weekly visits. He described his parents as supportive. He stated that prior to his legal charges, he did not share emotions with his family or friends. He said, "I got better at opening up with my parents." he said he has discussed his mental health symptoms with them. He stated that his brothers are also supportive.

Mr. Aiello expressed an interest in participating in mental health treatment to develop coping skills and further understanding his sexual behavior, including sex offense specific treatment. He plans to continue taking his psychiatric medications. He stated that he would not have any problems complying with all conditions of probation. His goals are to "get back on my feet, find a job, and get my life tuned back around."

## Mental Status Exam and Behavioral Observations
Mr. Aiello appeared his stated age (34). He was dressed in prison scrubs, handcuffed, and was adequately groomed. He did not demonstrate problems with motor functioning. He was oriented to time, person, place, and situation. His thoughts were logical and relevant, and there was no abnormal content. His speech was of normal rate, volume, and tone. He maintained good attention and eye contact throughout the interview. He described his mood as "normal" and said he feels "minor depression" most days "because of the situation I'm in." His affect was dysphoric. He denied symptoms of psychosis. He denied suicidal and homicidal ideation. He was cooperative and pleasant.

## Risk Assessment
The Static-99R was not utilized because the instrument is not recommended for use with individuals whose only sexual offense charge is a child pornography offense. Those individuals do not meet the scoring criteria. Eke et al. (2024) found that the CPORT was a better predictor for sexual recidivism among CSEM offenders when compared to the Static-99R.

### Child Pornography Offender Risk Tool (CPORT)
The CPORT is a structured checklist that was designed to predict sexual recidivism (contact, non-contact, and child pornography sexual offenses) for adult males with a conviction for a child pornography offense. The CPORT is scored based on information known at the time of conviction (e.g., pre-conviction data). There are 7 factors associated with sexual recidivism; each factor is coded as not present "0" or present "1." Total scores range from 0 to 7. At this time, there are no risk levels associated with the total score. Seto & Eke (2015) reported probability estimates for the CPORT developmental sample; however, the CPORT authors do not recommend using the CPORT to reference recidivism probabilities until further validation studies are completed.

The CPORT was developed for use with adult males with a conviction for a child pornography offense. While there is reason to believe the CPORT will apply to charged individuals, there is currently no empirical support for this use. This information is intended to provide insight into individual risk factors and provide some context for an individual's offending. Still, it is not being used to score the individual compared to other offenders. Using the CPORT is a preferable alternative to unstructured clinical judgment about risk.

There was insufficient data to score the CPORT, given that there was no full forensic inventory and description of the CSEM content. Therefore, the last two items of the CPORT could not be scored. The CPORT is not recommended for use when more than one item is omitted.

The following CPORT factor is present for Mr. Aiello:
- *Age at time of index investigation-* He was 34 years old at the time of the index investigation

The following CPORT factors are not present for Mr. Aiello:
- *Any prior criminal history-* No prior criminal convictions
- *Any failure on conditional release, including charge at index-* No probation violations
- *Any contact sexual offending, including a charge at index-* No history of contact sexual offense
- *Indication of pedophilic or hebephilic interests-* No statements to police that he had pedophilic interests

The following CPORT factors could not be scored:
- *More boy than girl content in the child pornography material*
- *More boy than girl content in the nude/other child material*

Stable 2007
The Stable-2007 is an evaluator-rated measure of stable dynamic (long-term, relatively enduring) treatment/supervision targets associated with sexual reoffending. The Stable-2007 contains 13 items related to psychological, interpersonal, and sexual functioning, which are combined to produce a total score and a corresponding risk level. Items are scored as 0 (not present), 1 (partially present), or 2 (present). Total scores range from 0 to 26 with the following risk categories: Low (0-3), Moderate (4-11), and High (12+).

As the table below indicates, Mr. Aiello received a total score of 9, which placed him in the moderate risk category for being charged or convicted of another sexual offense.

| Risk Factor | Score |
|---|---|
| Significant social influences | 1 |
| Capacity for relationship stability | 2 |
| Emotional identification with children | NA |
| Hostility toward women | 0 |
| General social rejection | 0 |

| Lack of concern for others | 0 |
|---|---|
| Impulsive | 0 |
| Poor problem solving | 1 |
| Negative emotionality | 0 |
| Sex drive/sexual preoccupation | 2 |
| Sex as coping | 2 |
| Deviant sexual interests | 1 |
| Cooperation with supervision | 0 |
| **TOTAL SCORE** | **9** |

Mr. Aiello received a score of 1 for significant social influences. He currently receives positive support from his parents and brothers. He stated that he did not previously express his emotions to them, though he recently began doing so. He received a score of 2 for capacity for relationship stability because he is not currently in a romantic relationship, and he has never lived with a romantic partner. He received a score of 1 for poor problem solving because he could identify relevant areas that have caused problems and some problem-solving strategies, though he also has a pattern of avoiding emotionally based problems. He received a score of 2 for sexual preoccupation due to his pattern of excessive pornography use and compulsive masturbation. He did not report current sexual preoccupation. He received a score of 2 for sex as coping due to his report that he previously viewed pornography and masturbated as a primary coping skill, in addition to working and going to the gym. He received a score of 1 for deviant sexual interests due to having viewed CSEM content. He denied pedophilic interests during the current interview, and there is no additional data suggestive of pedophilic interests.

Protective Factors
The contribution of protective factors to risk has not yet been established for adults with CSEM offenses; however, information about protective factors is helpful for decisions about management/supervision and treatment. The following protective factors were identified for Mr. Aiello:

- Self-control (no recent behavioral problems)
- Positive attitudes toward rules and regulations (compliant with institutional rules)
- Prosocial sexual interests (expressed interest in consensual sexual behavior with adults)
- Positive social network (support from his family)
- Participation in mental health treatment (actively engaged while at McClean and expressed interest in continued mental health treatment)

**Diagnostic Impression**
Mr. Aiello does not meet the Diagnostic and Statistical Manual of Mental Disorders, fifth edition, text revision (DSM-5-TR) criteria for a paraphilic disorder at this time. I considered a diagnosis of pedophilic disorder based on his possessing CSEM involving prepubescent children. During the interview, he denied sexual attraction to prepubescent children. There is insufficient data to determine whether Mr. Aiello has a recurrent, intense sexual attraction to prepubescent children; therefore, a diagnosis of pedophilic disorder is not offered.

Mr. Aiello meets the DSM-5-TR diagnostic criteria for other specified disruptive, impulse-control, and conduct disorders (hypersexual). He did not report current sexual preoccupation; however, he reported that he previously engaged in excessive pornography use and compulsive masturbation. He reported that it was difficult for him to stop viewing pornography, as he used it as a primary coping mechanism. His sexual behaviors resulted in legal charges and loss of employment.

**Summary and Opinion**

Mr. Alexander Aiello is a 34-year-old male who is incarcerated at PCCC. In April 2025, he was charged federally with one count of Possession of Child Pornography. The charges are currently pending. His current detention is voluntary. Mr. Aiello was referred for a sexual risk evaluation by his attorney.

There was insufficient data to score the CPORT, which is a structured checklist designed to predict sexual recidivism for adult males with a history of accessing CSEM. Of the items that were assessed, Mr. Aiello presented with one of five possible risk factors identified within the CPORT. He scored in the moderate risk category on the Stable-2007, a measure of dynamic risk. He also presents with many protective factors. Mr. Aiello does not present with pedophilic interests or antisocial (i.e., procriminal) attitudes and behaviors. His sexual offending resulted from sexual preoccupation, sexualized coping, intimacy deficits, and poor problem solving. His mental health symptoms indirectly contributed to his sexual offending, as he engaged in excessive masturbation and pornography use in response to his life stressors. He described a prior inability to recognize and tolerate his emotions, and expressed that he has benefited from mental health medication and treatment.

Based on the results of the risk assessment, it is my opinion that Mr. Aiello is at low to moderate risk of engaging in a future CSEM. It is my opinion that he is at low risk of engaging in a future contact sexual offense. Research indicates that CSEM offenders without a history of contact sexual offenses are generally at low risk of committing future contact sexual offenses (Seto et al., 2011; Seto et al., 2015).

Based on the results of the risk assessment and a review of the official records, it is my opinion that Mr. Aiello's risk of sexually reoffending can be effectively managed in a community setting with supervision and specialized treatment. He demonstrated engagement in mental health treatment while at McLean and expressed a desire to continue treatment. There is no indication that he would have difficulty complying with probation requirements.

The following treatment recommendations are offered:

1) Mr. Aiello should participate in treatment designed for individuals who engage in child pornography/ CSEM offenses. Treatment should be individualized to his treatment needs and target the risk factors identified in this evaluation.
2) Mr. Aiello should continue to develop an understanding of the factors that contributed to his sexual offending. He should use treatment to address those contributing factors and develop skills to meet his needs in a healthy and prosocial manner.
3) Mr. Aiello's internet use should be restricted (i.e., no sexual content or pornography) and monitored.

4) Mr. Aiello should participate in mental health treatment and receive medication management related to his PTSD and major depressive disorder.

Respectfully submitted,

*Kaitlyn Peretti, PsyD.*
Kaitlyn Peretti, Psy.D.